## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| **THOMAS M. SMITH, Y11769,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-00677-SMY** |
| | ) | |
| **LATOYA HUGHES,** | ) | |
| **JOHN BARWICK,** | ) | |
| **LIEUTENANT JOHNSON,** | ) | |
| **SERGEANT BIRD, and** | ) | |
| **COUNSELOR HAGGERT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Thomas Smith, an inmate of the Illinois Department of Corrections currently incarcerated at Big Muddy River Correctional Center, filed this civil rights action under 42 U.S.C. § 1983, claiming unconstitutional living conditions at Pinckneyville Correctional Center. He seeks monetary and injunctive relief.[1]  The Complaint (Doc. 1) is subject to review under 28 U.S.C. § 1915A, which requires the Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id.*

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-10): Plaintiff is a severely mentally ill (SMI) inmate who was housed at Pinckneyville Correctional Center (Pinckneyville) from November 23, 2023 until April 17, 2025. *Id.* at 3-8.  Severe staffing

---

[1] Plaintiff requests "some sort of" injunctive relief at Pinckneyville. This request is denied without prejudice as **MOOT**. Plaintiff is no longer housed at Pinckneyville (*see* Doc. 9), and he discloses no plans to return. *Tolentino v. Baker*, 679 F. App'x 503 (7th Cir. 2017) ("If a prisoner seeking injunctive relief for conditions of confinement at a particular prison is transferred without a realistic possibility of return, then his request for relief becomes moot.").

shortages at the prison resulted in inhumane living conditions.

The chronic staffing shortage resulted in daily lockdowns that often lasted 24 hours and occurred on consecutive days. Prison programs were cancelled. Classrooms sat empty because no teachers were available. Plaintiff received no individual counseling for six months due to the unavailability of mental health professionals. He was allowed to attend recreation only eight times in six months, even though he was unable to exercise in his small cell. *Id*. at 3-4. Plaintiff suffered from muscle atrophy, joint pain, cramps, and mental health issues as a result. *Id*.

The facility was filthy. *Id*. at 5-6. Cells were infested with roaches, crickets, spiders, mice, and other bugs. Vents were covered in rust and mold. Cleaning supplies were unavailable. Plaintiff had to use his t-shirts and towel to clean his cell. He had to use shampoo as cleaning solution, and the shampoo was not antibacterial. The prison's water was cloudy and smelly. The facility was cited for repeated violations of environmental standards after the water tested positive for the bacteria that causes Legionnaires' disease, a serious respiratory illness. Plaintiff suffered more respiratory infections than any other time in his life. He was denied showers for three days at a time. *Id*.

In October 2024, the plumbing broke, and raw sewage flowed into his unit. *Id*. at 7. Plaintiff was exposed to urine and feces for a week. He could not use the toilet and had to hold his bowels. Plaintiff ate his meals surrounded by the human waste. *Id*.

Prison officials frequently said that staffing shortages prevented them from performing their jobs effectively, and this caused safety issues. *Id*. at 3-5. Officers were unavailable to conduct regular wing checks or routine shakedowns. Staff did not notice fights, weapons, or drugs. While Plaintiff was at Pinckneyville, three inmates died of drug overdoses, and three hundred inmates were hospitalized with symptoms of overdose. The staff encouraged violence by using

2

threats, name calling, and other comments. Officers told inmates that they did not care if the inmates killed themselves or each other, so long as the staff was unharmed. *Id.*

In 2024, IDOC staff went on strike to protest the severe staffing shortage and drug epidemic. *Id.* at 5. The strike was televised for five or six days. Officers publicly stated that the "administration didn't seem to care" about the fact that the "facilities [we]re unsafe for staff and offenders." *Id.* at 6. These comments were directed at the Governor and IDOC Director Latoya Hughes. Conditions only got worse in the six months after the strike ended. *Id.*

Plaintiff filed grievances to complain about these conditions, including a grievance on behalf of himself and forty other inmates when the plumbing broke. *Id.* at 2, 7. Plaintiff spoke with Lieutenant Johnson about the prison conditions approximately forty times. *Id.* at 8. He spoke to Sergeant Bird about the conditions "five days a week." *Id.* She responded by saying, "Blame Major Baker and Asst. Warden Corrales."[2] *Id.* When Plaintiff asked her to address the issues with them, Sergeant Bird refused. Plaintiff also had daily discussions about these issues with Counselor Haggert and submitted written grievances to the counselor. Lieutenant Johnson and Sergeant Bird referred to Plaintiff as "that fuckin law man." *Id.* at 7. After writing the grievances, Plaintiff was "mysteriously" moved to segregation on investigative status.[3] *Id.*

Based on the allegations, the Court designates the following claim in the Complaint:

**Count 1:**    Eighth Amendment claim against Defendants for subjecting Plaintiff to unconstitutional living conditions at Pinckneyville from November 23, 2023 until April 17, 2025, by understaffing the prison and causing Plaintiff to endure prolonged periods of lockdown, denial of exercise opportunities, inadequate mental health treatment, and unsanitary or unsafe living conditions that resulted in physical and/or emotional harm.

---

[2] Major Baker and Assistant Warden Corrales are not named as defendants, so all claims against them are considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (title of the complaint "must name all the parties").

[3] Plaintiff identifies no defendant in connection with this allegation and asserts no claim stemming from it.

Any other claim mentioned in the Complaint but not addressed herein is considered dismissed without prejudice under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face").

## Discussion

Prison officials violate the Eighth Amendment when they show deliberate indifference to adverse conditions that deny inmates "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Adequate clothing, housing, and medical care are among life's necessities. *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016). To state a claim, a plaintiff must describe an objectively serious deprivation and deliberate indifference by each defendant.

Plaintiff's Complaint describes severe and chronic understaffing, perpetual lockdowns, denial of exercise, inadequate mental health treatment, exposure to drugs and violence, and filthy living conditions, resulting in physical and/or emotional harm. Standing alone or in combination, these alleged conditions are sufficiently serious to support an Eighth Amendment claim at this stage.

Plaintiff must also allege that each defendant acted with deliberate indifference. This standard is satisfied where an official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837. Plaintiff alleges that he complained about the conditions, verbally and in writing, to Lieutenant Johnson, Sergeant Bird, and Counselor Haggert, and they deliberately disregarded them. This is sufficient to state a viable deliberate indifference claim against Defendants Johnson, Bird, and Haggert.

Plaintiff also alleges that the systemic conditions were widely known to Warden John Barwick and IDOC Director Latoya Hughes.  Both high-ranking officials were allegedly aware of these conditions due to their obvious, pervasive, and highly publicized nature.  Although high-ranking officials are typically not held liable for localized violations, officials "are expected to have personal responsibility for systemic conditions."  *Antonelli v. Sheahan*, 81 F.3d 1422, 1428-29 (7th Cir. 1996).

Plaintiff alleges widespread and well-known problems at the prison that were the subject of IDOC staff strikes and publicized on television, and that the conditions worsened after IDOC staff complained about the conditions. These allegations support a deliberate indifference claim against Defendants Barwick and Hughes.

### Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A.  **COUNT 1** will proceed against **ALL DEFENDANTS**.

With respect to **COUNT 1**, the Clerk of Court shall prepare for **ALL DEFENDANTS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's work address, or, if not known, his or her

last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, even though his *in forma pauperis* application was granted. 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 2, 2025**

> s/ *Staci M. Yandle*
> **Staci M. Yandle**
> **United States District Judge**

6

## <u>Notice to Plaintiff</u>

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**